UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA COLLEEN REDFERN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | Case No.15-cv-03883-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 32 & 33 |

In this Social Security case, Plaintiff Laura Colleen Redfern seeks waiver of a $41,935.20 repayment of disability insurance benefits improperly made to her over a two-year period. Defendant Commissioner of the Social Security Administration ("Commissioner") found Plaintiff not a fault for the overpayment, but determined that she was nonetheless not entitled to a waiver of the overpayment. The parties' cross-motions for summary judgment are now pending before the Court. (Dkt. Nos. 32 &33.) Because the Commissioner's denial of a waiver was not supported by substantial evidence and contained legal errors, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.[2]

---

[1] Nancy Berryhill, Acting Commissioner of Social Security, is substituted for her predecessor, Carolyn W. Colvin, Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 22.)

# FACTUAL & PROCEDURAL BACKGROUND

**A.     Plaintiff's Application for Disability Benefits**

Plaintiff Laura Colleen Redfern is a 56-year-old woman with multiple sclerosis who first applied for disability insurance benefits on May 6, 2008. (Administrative Record ("AR") 21-24.) She began receiving disability benefits in February 2009. (AR 25-27.) Between the date of her application and the date she began to receive benefits, she applied for and obtained a part-job with Home Depot, which commenced in January of 2009. (AR 47, 59.) Plaintiff informed the Social Security Administration (the "Agency") that she obtained this position in August 2009. (AR 28-29, 47.) The next month, the Agency sent Plaintiff a letter stating that they had reviewed the information regarding her work and "found that your disability is continuing." (AR 144.) The letter advised Plaintiff that she would be contacted "if there [were] any questions as to whether your eligibility continues." (*Id*.)

Nearly two years later, the Agency sent Plaintiff a letter stating that because Plaintiff "began doing substantial gainful work in January 2009," they had "determine[d] that the decision we had made to allow disability benefits was not correct and should be changed." (AR 57.) Two months later, Plaintiff received a notice stating that she had been overpaid $43,219.20 and owed the Agency $41,935.20.[3] (AR 64.) A few weeks after receiving this notice, Plaintiff filed a request for reconsideration disputing the overpayment. (AR 67.) A month after she filed this request, Plaintiff received a billing statement advising her that the full amount of her overpayment was due in less than three weeks. (AR 68.) Plaintiff then filed a request for a waiver of the overpayment. (AR 78.) Her request was denied in January 2012 "because [she was] found to be at fault for causing the overpayment" as she engaged in "Substantial Gainful Work effective 01/2009 during the 5 month waiting period of your Disability onset date of September 1, 2009." (AR 80.) Six months later, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") wherein she contested the overpayment and the determination that she was not entitled to a waiver because she was at fault in the overpayment. (AR 53.)

---

[3] The difference in the amount overpaid versus overdue is because the Agency was able to stop transfer of Plaintiff's September 28, 2011 payment prior to receipt. (AR 64.)

### B. The ALJ Hearing

On July 10, 2013, Plaintiff appeared for her hearing before ALJ Richard Laverdure. (AR 237-254.) The ALJ continued the hearing to allow Plaintiff to attempt to obtain counsel and to provide additional information in support of her waiver request. (AR 252-254.) Plaintiff appeared for her final hearing on December 13, 2013 accompanied by her mother, but she had been unable to secure legal counsel. (AR 211-214.) Plaintiff provided an updated waiver request to the ALJ at the start of the hearing. (AR 148.) The waiver stated that her monthly income was $2,368 ($2,068 in wages and $300 in child support) and that her monthly expenses for mortgage, food, utilities, insurance and taxes were $2,600, plus she had $335 in her checking account. (AR 151-153.) The hearing focused on when Plaintiff started working at Home Depot, whether that was during her five-month waiting period, and when Plaintiff notified the Agency that she began working for Home Depot. (AR 226-236.) Plaintiff also testified that she does not "have the money at all to pay it back." (AR 223.) She has "$200 or $300 less money than I need to pay my bills" and she pays $400 per month for medical insurance. (AR 221-223.)

### C. The ALJ Decision

A month after the hearing, the ALJ issued his order determining that Plaintiff was overpaid $41,935.20 in disability benefits because she engaged in "substantial gainful activity as a sales person at Home Depot before and during her five-month waiting period, from January 2009 through the present." (AR 16.) The ALJ found that Plaintiff was not at fault in causing the overpayment because she timely alerted the Agency to her work activity as acknowledged in the Agency's August 25, 2009 letter and Plaintiff made a "good faith effort" to keep the Agency informed of her earning activity. (AR 16-17.) The ALJ nonetheless denied Plaintiff's request for a waiver because recovery of the overpayment would not defeat the purpose of the Social Security Act nor would it be against equity and good conscience. (AR 17-18.) The ALJ focused on the fact that Plaintiff's financial statements failed to explain how she managed the shortfall between her monthly income of $2,368 and her expenses of $2,600. (AR 17.) The ALJ also noted that the claimant's mother testified that she paid $400 a month for health benefits, but her recent paystubs only reflected $300 of deductions for health care and 401K retirement funds. (AR 17.) From this,

the ALJ concluded that Plaintiff "has failed to provide accurate details in her financial statement to prove that she is unable to repay the overpayment." (*Id.*) The ALJ also noted that "[a]side from the claimant's financial statement which appears to contain errors of accounting, the claimant has failed to provide any documentary evidence, such as copies of tax forms, bills, or bank statements, which would prove that recovery of overpayment would deprive the claimant of income required for necessary and ordinary living expenses." (AR 17.) Nor had Plaintiff submitted evidence showing that "she detrimentally changed her position financially or relinquished a valuable right because of the overpayment." (AR 18.)

The ALJ concluded that based on Plaintiff's failure to provide testimony or documentary evidence "with precise details to prove that she is unable to repay the amount of overpayment," and the fact that she "clearly did not meet the criteria for disability benefits" given her work, she and her mother's "allegations regarding the claimant's inability to repay the amount of overpayment [we]re unsupported by the evidence and [] generally not credible." (AR 18.)

### D. The Appeal's Council Decision

Plaintiff filed a timely appeal of the ALJ's decision attaching 28 pages of additional documentation supporting her claim of hardship were she required to repay the overpayment. (AR 8-9, 182-210.) The Appeal's Council considered the additional documentation but found that "the information does not provide a basis for changing the Administrative Law Judge's decision." (AR 4.) In particular, with regard to the evidence she submitted of her monthly income and expenses, because "these documents show your monthly income of $2,998 exceeds your monthly expenses of $2,948.46 by $49.54 each month [] you are able to repay the overpayment." (*Id.*)

### E. This Action

Plaintiff, proceeding pro se, timely filed this action disputing the overpayment and denial of a waiver. (Dkt. No. 1.) Upon receipt of the initial summary judgment briefing, the Court referred Plaintiff to the Federal Pro Bono Project for appointment of counsel. (Dkt. No. 24.) Following appointment of counsel, the parties appeared for a case management conference and the Court referred the case to a magistrate judge for a settlement conference. (Dkt. No. 28.) The parties then filed a stipulation, which the Court granted, seeking leave to forego the settlement

4

conference and instead file new cross-motions for summary judgment. (Dkt. Nos. 30 & 31.) The briefing is now complete on the cross-motions.[4] (Dkt. Nos. 32, 33 & 35.)

**STANDARD OF REVIEW**

The Court has authority to review the Commissioner's final decision under the substantial evidence standard. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..."); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The Court may overturn the Commissioner's refusal to waive repayment only if that decision is not supported by substantial evidence or is based on legal error. *See Albalos v. Sullivan*, 907 F.2d 871, 873 (9th Cir. 1990); *Anderson v. Sullivan*, 914 F.2d 1121, 1122–24 (9th Cir. 1990); *Harrison v. Heckler*, 746 F.2d 480, 481 (9th Cir. 1984). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2000). The ALJ is responsible for determining credibility and resolving ambiguities. *See id.*; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court is required to uphold the ALJ's decision "where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40. However, the ALJ's findings must be supported by specific, cogent reasons. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

**DISCUSSION**

**A.   Legal Standard**

Under Section 404(a) of the Social Security Act, the Commissioner may recover overpaid disability insurance benefits. 42 U.S.C. § 404(a)(1)(A). However, a claimant may obtain a waiver of the overpayment amount, if the Commissioner finds: (1) that the claimant was without fault, and (2) that repayment would either defeat the purposes of the Social Security Act or would be against equity and good conscience. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a); *Quinlivan v.*

---

[4] Defendant's opposition and cross-motion fail to respond to Plaintiff's motion as it is word-for-word identical to the brief Defendant submitted in opposition to Plaintiff's pro se motion for summary judgment. (*Compare* Dkt. No. 23 *with* Dkt. No. 33.)

*Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990). Here, only the second prong is at issue because the ALJ found that Plaintiff was without fault as to the overpayment. Thus, to be eligible for a waiver Plaintiff had to show that recovery of the overpayment would either defeat the purpose of the Social Security Act, or be against equity and good conscience. 42 U.S.C. § 404(b); *see Lewin*, 654 F.2d at 632 n.1. Plaintiff contends that the ALJ and Appeals Council erred in concluding that she was ineligible for a waiver under either basis. The Court agrees.

**B.      Recovery Would Defeat the Purpose of the Act**

Recovery of an overpayment defeats the purpose of the Act if it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). This determination "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." *Id*. The regulations define ordinary and necessary expenses as:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;
>
> (2) Medical, hospitalization, and other similar expenses;
>
> (3) Expenses for the support of others for whom the individual is legally responsible; and
>
> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

*Id*. at 404.508(a)(1)-(4). Thus, if an individual "needs substantially all of [her] current income (including social security monthly benefits) to meet current ordinary and necessary living expenses" it would be defeat the purposes of the Act to recover the overpaid benefits. *Id*. at § 404.508(b).

**1)  The ALJ's Decision is Not Supported by Substantial Evidence**

The ALJ found that Plaintiff had failed to provide sufficient documentation and evidence establishing that recovery of the overpayment would deprive her of the income required for her necessary and ordinary living expenses. (AR 17-18.) This finding was not supported by substantial evidence.

6

First, the ALJ faulted Plaintiff for failing to provide any "documentary evidence" to support her inability to pay, but Plaintiff submitted both a sworn waiver application and over four months' worth of earning statements. (AR 148-173.) Plaintiff's waiver application details her expenses: $1,750 for her mortgage, $300 for food, $300 for utilities, $100 for taxes, $100 for medical-dental, and $50 for medical and dental co-pays. (AR 153.) The waiver was submitted under penalty of perjury and establishes that Plaintiff's outflow of expenses is $2660. (AR 153, 155.) Plaintiff's wage statements reflect $1,034.73 (or less) in net pay on a bi-weekly basis between July 22, 2013 and November 11, 2013. (AR 156-173.) Plaintiff also attested that she received $300 per month in child support and had $335 in her checking account. A plaintiff's "sworn testimony that he would be 'destitute'" is evidence of inability to pay. *See Pauloo v. Soc. Sec. Admin.*, No. CV 05-1134-MAN, 2008 WL 906365, at *16 (C.D. Cal. Mar. 28, 2008).

Second, to the extent that the ALJ found this evidence standing alone insufficient, the ALJ had a duty to develop the record regarding Plaintiff's ability to pay. *See Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) ("where the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.") (internal citation omitted). The ALJ did not ask Plaintiff *any* questions about her ability to pay at the hearing and instead focused his questioning on when Plaintiff had notified the Agency that she was working at Home Depot and the question of whether the overpayment was her fault. Plaintiff interjected on at least two occasions that she did not have the ability to repay the overpayment and offered to provide additional documentation including her bank statements, but the ALJ stated "[l]et me take a look at what I have first. And then if I do need additional, we'll contact you about that." (AR 221, 225.) He assured Plaintiff that he did not "want [her] to submit it for no reason," but then his subsequent order found that "she [had] failed to provide any documentary evidence, such as copies of tax forms, bills, or *bank statements*." (*Compare* AR 225 *with* AR 17 (emphasis added).) "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb*

7

*v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2006) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  Here, the ALJ rejected Plaintiff's offer to provide additional documentation at the hearing and then improperly faulted Plaintiff for not having done so in his decision.

Third, the ALJ was fixated on the fact that Plaintiff had not provided an adequate explanation for how she managed her monthly shortfall of $232—the difference between her monthly income of $2,368 and her expenses of $2,600.  (AR 17.)   However, he ignored that she had $335 in her checking account which she had set aside to pay bills (AR 151, 154) and that she testified that she was not in fact able to manage the shortfall—instead, she has "$200 or $300 less money than I need to pay my bills."  (AR 221.)

Finally, the ALJ's adverse credibility finding is not supported by substantial evidence.  An ALJ's rejection of a claimant's testimony must be accompanied by a specific finding to that effect, supported by a "specific, cogent reason for the disbelief."  *Lewin*, 654 F.2d at 634–35 (stating that a plaintiff's testimony "must be considered seriously without being entirely discounted because of weak (or no) objective findings.  Further, rejection of the testimony must be accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief.") (internal quotation marks omitted); *Albalos*, 907 F.2d at 873–74 (reversing the district court because the adverse credibility determination was not supported by "full and detailed findings of fact" or a clear articulation of why the plaintiff should be disbelieved).  Other than his insistence that Plaintiff had failed to explain how she managed the shortfall between her income and expenditures and thus had not adequately documented her financial situation, the only specific inconsistency that the ALJ cited was that between the unsworn testimony of Plaintiff's mother that Plaintiff paid $400 per month for health benefits and Plaintiff's paystubs which reflect $300 per month in deductions for health benefits.[5]  (AR 17.)  The ALJ's finding was in error.  Plaintiff's bi-weekly pay record for September 16, 2013 through November 11, 2013 reflect that she pays $197.25 for

---

[5] Plaintiff's mother was never placed under oath or questioned about Plaintiff's ability to pay.  She interjected at various points during Plaintiff's testimony in both the first and the second hearing, and was advised that she could not do so during the second hearing (AR 226.)  The ALJ nonetheless relied upon her unsworn testimony regarding Plaintiff's medical insurance costs as a basis to discredit both their testimony.  (AR 17-18, 246.)

medical insurance, $12.72 for vision, and $32.22 for dental insurance every two weeks. This equals $524.75 a month in medical expenses. It is unclear how the ALJ derived his $300 a month figure—it is not supported by the evidence and thus fails to provide a clear and cogent basis to discredit Plaintiff's testimony.[6]

In sum, the ALJ's conclusion that Plaintiff failed to offer sufficient evidence of her inability to repay the overpayment is not supported by substantial evidence and thus cannot stand. "If reliance has been placed on one portion of the record to the disregard of overwhelming evidence to the contrary, the reviewing court must decide against the Secretary." *Harrison v. Heckler*, 746 F.2d 480, 483 (9th Cir. 1984); *Vallejo v. Astrue*, No. 2:09-CV-03088 KJN, 2011 WL 2925647, at *5 (E.D. Cal. July 15, 2011) ("in certain circumstances an ALJ's factual errors may undermine his conclusions or credibility determinations, and may render them unsupported by substantial evidence or directly contradicted by the record.").

**2) Both the ALJ and Appeal's Council Erred as a Matter of Law**

The ALJ's finding that Plaintiff had failed to prove that she could not afford to repay the overpayment is not supported by the law. Under the regulations, "recovery will defeat the purposes of title II ...where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). Plaintiff provided uncontradicted evidence that she needs substantially all her current income for ordinary and necessary living expenses. The ALJ's conclusion to the contrary is wrong as a factual and legal matter.

The additional evidence Plaintiff submitted to the Appeals Council does not alter this fact. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). Plaintiff submitted

---

[6] Defendant's opposition and cross-motion for summary judgment is no help in this regard as it fails to respond to Plaintiff's arguments regarding the adverse credibility finding, and instead, incorrectly states that Plaintiff does not dispute the adverse credibility finding.

9

copies of her mortgage payments, her utility bills, her checking account balance, her cable bill, and her most recent tax returns. (AR 182-210.) Although Plaintiff corrected a mistake regarding her receipt of child support to reflect that she receives $500 rather than $300 per month in child support, she stated that this still leaves her short on bills and she falls behind every month. Indeed, her utility bill reflects that she owes a past due amount of $136.35 which she must pay to avoid service termination (AR 189.) Plaintiff also stated that she had taken a loan against her 401K. (AR 9.)

The Appeals Council nonetheless concluded that she would be able to afford the overpayment because her income exceeded her expenses every month by $49.54. (AR 4.) This determination was likewise in error. The regulations provide that a waiver is appropriate where the claimant needs substantially all her income to meet ordinary living expenses. *See, e.g.*, *Vallejo v. Astrue*, No. 2:09-CV-03088 KJN, 2011 WL 2925647, at *13 (E.D. Cal. July 15, 2011) (concluding that plaintiff required substantially all this income where he and his wife had a monthly surplus of $25); *Pauloo v. Soc. Sec. Admin.*, No. CV 05-1134, 2008 WL 906365, at *16 (C.D. Cal. Mar. 28, 2008) (concluding that plaintiff had demonstrated that repayment would defeat the purpose of the act where he "was relatively impoverished and needed whatever monies he had for his ordinary and necessary living expense."). "[T]he substantially all language in subsection (b) of section 404.508 does not dictate that simply because [a claimant has] ... nominal savings, [he] should be required to repay an overpayment ... and place [himself] in a precarious financial position, unable to cope with unforseen expenses or emergencies." *Setian v. Apfel*, 110 F. Supp. 2d 24, 28 (D. Mass. 2000) (internal citation and quotation marks omitted, alterations in original).

C.  **Recovery Would be Against Equity and Good Conscience**

The ALJ's conclusion that recovery of the overpayment here would not be against equity and good conscience is likewise not supported by substantial evidence. In reaching this conclusion, the ALJ simply stated that "claimant did not submit any evidence that she detrimentally changed her position financially or relinquished a valuable right because of the overpayment." But this is only one piece of the inquiry. While the regulations state that recovery

of an overpayment is against equity and good conscience "if the claimant changed his or her position for the worse, relinquished a valuable right, or lived in a separate household from the overpaid person at the time of overpayment and did not receive the overpayment," *see* 20 C.F.R. § 404.509(a), the Ninth Circuit has held that "the meaning of the phrase, 'against equity and good conscience,' cannot be limited to the three narrow definitions set forth in the Secretary's regulation." *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990). "Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case." *Id.* (concluding that a waiver was appropriate because "it [wa]s unfair to have expected Quinlivan to hold the funds for more than two years after his release, without any prospect of steady income and with eligibility for general assistance dependent on his level of assets.").

So too here. The overpayment occurred through no fault of Plaintiff, and the record demonstrates that she is barely making ends meet. To require her to repay over $40,000 in benefits would be contrary to equitable principles. This conclusion is especially warranted here since the declaration Plaintiff submitted with her pro se summary judgment motion attests that she was terminated from Home Depot in April 2016. (Dkt. No. 18 at ¶ 10.) As a result, she lost her medical insurance, and the funds she receives from unemployment are insufficient to cover her living expenses so she is borrowing money from her daughter, but her daughter cannot support her indefinitely. (*Id*. at ¶¶ 12-14.) Thus, under the circumstances of this case, repayment would be against equity and good conscience.

**D.     Reversal of the ALJ and Remand for Grant of a Waiver is Warranted**

The Court has discretion in determining whether to reverse or remand a social security case. *See Lewin*, 654 F.2d at 635–36; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings," the case should be remanded. *Lewin*, 654 F.2d at 635. Where the record has been thoroughly developed, however, a remand is not warranted. *Id*. In *Lewin*, for example, the court deemed reversal appropriate because the ALJ had "neither expressly discredit[ed] Lewin's testimony nor articulate[d] any reasons for questioning her

11

credibility" and the court determined that a rehearing would not serve to cure these fundamental flaws with the ALJ's decision. *Id*. Here, a remand for further proceedings is similarly unwarranted because the record has been fully developed and a rehearing would simply delay the judgment to which Plaintiff is entitled. Instead, reversal is required based on the ALJ's unsupported adverse credibility finding, and the absence of evidence—let alone substantial evidence—to support the ALJ's findings regarding Plaintiff's ability to repay the overpayment. The ALJ and Appeal's Council's legal errs regarding the standard for a waiver likewise require reversal. The Court thus exercises its discretion to reverse the Commissioner's denial of Plaintiff's waiver.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED and the Commissioner's cross-motion for summary judgment is DENIED. (Dkt. Nos. 32 & 33.) This action is REMANDED to the Social Security Administration for further administrative action consistent with this Order including a grant of Plaintiff's Request for Waiver of Overpayment.

This Order disposes of Docket Nos. 32 & 33.

**IT IS SO ORDERED.**

Dated: March 2, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge